## Richmond

HOLLY FARMS/FEDERAL COMPANY, ET AL.

V.

LINDA J. YANCEY

Record No. 831386.

October 12, 1984.

Present: Carrico, C.J., Poff, Compton, Russell, Stephenson, and Thomas, JJ.

*Thomas G. Bell, Jr. (Timberlake, Smith, Thomas & Moses, P.C.,* on brief), for appellants.

*Barry A. Stiefel (Lawrence J. Pascal; John Q. Adams; Ashcraft & Gerel,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The issue in this Workers' Compensation case is whether a lumbosacral strain of gradual development is an occupational disease as defined in Code § 65.1-46.

Linda J. Yancey worked as an inspector for Holly Farms. It was her job to insure that packages of chicken parts were properly sealed. In performing her work, Yancey was required to pick up the packages, turn them over to inspect the seals, and, if the seals were adequate, place the packages on a rack. She did this work while standing on a concrete floor. The packages weighed, on average, five pounds apiece. In the course of a shift, Yancey would usually load 500 to 600 racks, each of which held eight packages. She testified that "sometimes" she would load as many as 900

racks in one shift. In order to load the racks, Yancey had to make certain unspecified twisting movements of her body.

Yancey had worked as an inspector for four to five months before she experienced any back pain. She testified that on July 23, 1982, the day before she was scheduled to go on vacation, she had been working five to six hours when "it felt like in the middle of my back there was something pulling real hard." She finished her shift and went on vacation for a week. Yancey testified that when she returned from vacation her back "felt pretty good." According to her, "[t]he rest really helped it and then I went ahead and worked a couple of weeks and then it got worse again." She said that the soreness recurred "three weeks after" her return from vacation. She explained that after working a "couple of hours" her back "would get sore and by the end of the night it would feel like it was pulling down in there again so I'd go home." She stopped working on September 8, 1982.

On September 28, 1982, Yancey filed her first report of injury. In that report she said the date of her injury was "unknown." She described the nature of her injury as, "Lower Back Pain-Muscle Strain." On September 30, 1982, she filed an Application for Hearing in which she described the nature of her complaint as "Low Back pain, secondary to muscle strain." After an investigation, Holly Farms' carrier denied liability on the grounds that Yancey's condition did not result from an accidental injury or occupational disease which arose out of and in the course of employment.

The Commission scheduled a hearing to consider Yancey's claim of "accidental injury." The matter was heard before a deputy commissioner who, after hearing some of the testimony, advised the parties that he was going to consider the case "under an occupational disease theory as well as accidental injury theory." The deputy commissioner ruled that Yancey had suffered an accidental injury. He also made an alternative ruling: he stated that even if an accidental injury had not been proved, Yancey was entitled to compensation "on the basis of an occupational disease."

The full Commission, with one member dissenting, reversed the finding of accidental injury but upheld the finding of occupational disease. Holly Farms contends the full Commission erred. We agree.

Holly Farms advances two main arguments in support of its view that the Commission erred. First, it contends that a back

strain is not a disease and should not have been treated as such by the Commission. Second, it contends that even if we assume Yancey's back strain constituted a disease, she was not entitled to compensation because she failed to meet the conditions imposed by Code § 65.1-46.

The Workers' Compensation Act provides coverage in only two circumstances: "injury by accident, or occupational disease." Code § 65.1-7. Heretofore, we have not considered whether a back strain falls under the heading "occupational disease." In the past, our cases concerning back pain have consistently analyzed the facts to ascertain the existence of an "injury by accident." *See, e.g. VEPCO v. Cogbill*, 223 Va. 354, 288 S.E.2d 485 (1982); *Badische Corp. v. Starks*, 221 Va. 910, 275 S.E.2d 605 (1981); *Tomko v. Michael's Plastering*, 210 Va. 697, 173 S.E.2d 833 (1970); *Virginia Electric, Etc., Co. v. Quann*, 197 Va. 9, 87 S.E.2d 624 (1955); *Big Jack Overall Co. v. Bray*, 161 Va. 446, 171 S.E. 686 (1933). Under these cases, Yancey could not recover for an "injury by accident" because her evidence failed to establish a "sudden, obvious mechanical or structural change" in her back. *Cogbill*, 223 Va. at 357, 288 S.E.2d at 487.

Thus, implicit in our decisions is the rule that back injuries are injuries, not diseases. Consistent with this rule, the Commission stated in *Hensley v. Morton Frozen Foods Division*, 46 O.I.C. 107, 109 (1964), that: "Back strain is not a disease. Strain of the muscles or tendons in the back is due to a single or repeated physical trauma which injures the muscle or tendons."

Despite this Court's opinions regarding back injuries, Yancey urges us to adopt a broad definition of disease which would encompass virtually anything that goes wrong with the body. Yancey makes this argument even though the record is devoid of any evidence, expert or otherwise, that a back strain is a disease. Yancey merely asserts that her back strain is a disease. We do not find it necessary to pick our way through dictionary definitions of "disease" in order to reject Yancey's argument. The Virginia statute provides protection where there has either been an accidental injury or an occupational disease. A definition of either "injury" or "disease" that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act. For more than 50 years, back pains such as those complained of by Yancey have been treated in our cases as injuries, not as

diseases. If this distinction is to be done away with, the legislature must do so. We hold then, that on the facts of this appeal, Yancey's back pain was not a disease.

The Commission's ruling was in error for yet another reason. The Commission's finding that her disease was an "ordinary disease of life," together with other facts in the case, points unmistakably to the conclusion that Yancey was not entitled to compensation.

Upon review of Yancey's occupational disease argument, the Commission stated the following conclusion:

> Lumbar strain is generally known to be a disease process to which individual members of the general public may be exposed outside of the employment of poultry worker. We find that *lumbar strain is an ordinary disease of life.*
>
> . . . .
> Upon consideration of all the circumstances established by this record, the Commission finds that the employee's lumbar strain arose out of her employment as a poultry inspector and we conclude that her injury qualifies as an *excepted ordinary disease of life* under the definition of occupational disease in accord with the provisions of § 65.1-7 and § 65.1-46.

(Emphasis added.) Once the Commission concluded that Yancey suffered from an ordinary disease of life, she was not entitled to compensation unless her condition met either one of two exceptions contained in Code § 65.1-46; that provision reads in pertinent part as follows:

> No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable, except:
> (1) When it follows as an incident of occupational disease as defined in this title; or
> (2) When it is an infectious or contagious disease contracted in the course of employment in a hospital or sanitarium or public health laboratory.

The second exception has no application to this case. Unless the first exception applies, Yancey cannot recover even if a back strain is a disease.

In our opinion, the first exception does not apply because Yancey's back pain did not "follow as an incident of occupational disease." Yancey contends that this language is ambiguous and that it could be read in such a way that the back pain need not follow some other occupational disease but merely follow from the demands of the occupation. We think Yancey's reading of the statute is contrived and unreasonable. In our view, the plain meaning of the language set forth above is that before an ordinary disease of life can be excepted, and thus made compensable, the claimant must first establish the existence of an "occupational disease" and then establish that the ordinary disease of life of which she complains followed "as an incident of" that occupational disease. The six remaining factors referred to in the last part of Code § 65.1-46 have nothing whatever to do with proving an excepted ordinary disease of life.

The Commission erred in awarding compensation to Yancey. Therefore, we will reverse its award and enter final judgment for the employer.

*Reversed and final judgment.*