Western Electric Company

v.

Brenda E. Gilliam

Record No. 831835

Decided April 26, 1985, at Richmond

Present: All the Justices

*C. Torrence Armstrong (Boothe, Prichard & Dudley*, on brief), for appellant.

*Jack T. Burgess (Koonz, McKenney & Johnson, P.C.*, on brief), for appellee.

PER CURIAM.

The question posed by this appeal is whether, as the Industrial Commission ruled, tenosynovitis, a condition gradually incurred on account of repeated, work-related trauma, is compensable as an occupational disease under the Workers' Compensation Act.

On January 28, 1983, Brenda Gilliam filed an application for a hearing before the Commission. Alleging that she had contracted tenosynovitis and that the "[c]ondition developed gradually", she claimed medical benefits for the treatment of an "occupational disease". We review the evidence in the light most favorable to the claimant, who prevailed below.

Gilliam was employed by Western Electric Company in 1978. Her duties as a telephone-repair worker involved rapid, repetitive, and virtually continuous manipulation of her hands as telephone components moved along an assembly line. Gilliam first complained of pain in her hands in March 1980 when she was examined by Dr. J. J. Bellas, a physician employed by Western. During the remainder of that year, she visited Dr. Bellas on numerous occasions, reported the same symptoms, and attributed her problem to her duties at work. In February 1981, Dr. Bellas recommended a "work restriction", and Western changed her work assignment.

Based upon an examination conducted February 19, 1981, Dr. Charles Emich, an orthopedic surgeon, diagnosed Gilliam's condition as "[t]enosynovitis of long flexors of the thumb in both hands". As appears from progress reports recorded in February and March 1981, Dr. Emich found "no underlying disease process", concluded that Gilliam's symptoms were "due to an overuse type of syndrome", opined that "her condition was related to the repetitive motions involved in her job", and prescribed physical therapy, "resistive exercises", and a change in her work routine. In his final report, he stated that he had found "no persistent symptoms relative to her hands" and discharged his patient effective April 25, 1981.

Characterizing tenosynovitis as an occupational disease and finding that the claimant had proved causal connection, the deputy commissioner entered an award directing Western to pay the medical expenses Gilliam had incurred in the course of her treatment. Upon review, the full Commission affirmed the award.

As defined in section 107 of *The Merck Manual of Diagnosis and Therapy* (14th ed. 1982), a medical treatise cited by both parties, tenosynovitis is an "[i]nflammation of the lining of the

tendon sheath . . . [which] may be involved in systemic diseases . . . [or may be caused by] [e]xtreme or repeated trauma, strain, or excessive (unaccustomed) exercise".

For purposes of this opinion, we accept the Commission's factual finding that tenosynovitis is a disease. Compensability of a *disease*, gradually-incurred on account of repeated, work-related trauma, is not necessarily controlled by our decisions that an *injury* so induced is beyond the coverage of the Workers' Compensation Act. *See, e.g., Kraft Products* v. *Bernardini*, 229 Va. 253, 329 S.E.2d 46 (this day decided); *Lane Company, Inc.* v. *Saunders*, 229 Va. 196, 326 S.E.2d 702 (1985). However, the General Assembly has provided that an ordinary disease of life, *i.e.*, a disease "to which the general public is exposed outside of the employment", Code § 65.1-46, is not covered by the Act unless it falls within one of the two exceptions stated in the statute. And, construing that statute and citing Commission decisions, we have held that disability resulting from work-related aggravation of such a disease is not compensable. *Ashland Oil Co.* v. *Bean*, 225 Va. 1, 300 S.E.2d 739 (1983).

In *Holly Farms* v. *Yancey*, 228 Va. 337, 321 S.E.2d 298 (1984), we reviewed a decision in which the Commission found that a back strain, which had its origin in repeated, work-related trauma, was an ordinary disease of life.[1] In terms of cause and effect, we find no legally significant difference between Yancey's back strain and Gilliam's tenosynovitis. Because Yancey's ordinary disease of life did not fall within one of the statutory exceptions, we reversed her award. For the same reason, we must reverse Gilliam's award and enter final judgment for Western.

Our decision here is based, as it was in *Holly Farms*, upon our interpretation of legislative intent as reflected in the totality of the Workers' Compensation Act *as it exists today*.[2] Some contend that any disability arising out of and during the course of employment, including disabilities resulting from both injuries and dis-

---

[1] Accepting that finding for purposes of our analysis in that case, we noted that the Commission and this Court have consistently treated a back strain as an injury rather than a disease. *Id.* at 340, 321 S.E.2d at 229-30.

[2] Former Code § 65.1-47 listed tenosynovitis in its "Schedule of Occupational Diseases". Construing the effect of the repeal of that section 15 years ago, Acts 1970, c. 470, Western believes that the General Assembly intended to narrow coverage of the Act; Gilliam believes that the legislative purpose in eliminating the itemized schedule was to vest the Commission with broader discretion to determine what conditions should be compensable as occupational diseases.

eases caused gradually by repeated trauma, should be made compensable under the Workers' Compensation Act.[3] But such a consequential decision, impacting as it must a broad spectrum of economic and social values, is a matter of public policy reserved to the original and exclusive jurisdiction of the General Assembly, and we will not trespass upon its domain.

*Reversed and final judgment.*

---

[3] A joint subcommittee commissioned by the legislature to study one aspect of this question has recently reported no recommendations. Report of the Joint Subcommittee Studying the Feasibility of Compensating Gradually-Incurred, Work-Related Injuries under the Virginia Workmen's Compensation Act, H. Doc. No. 20 (1983).