# MERILLAT INDUSTRIES, INC., ET AL.

## v.

# CARTER MCKINNON PARKS

Record No. 921532

November 5, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ.,
and Harrison, Retired Justice

*John E. Kieffer (Woodward, Miles & Flannagan,* on briefs), for appellants.
*Ginger Jonas Largen (Gerald F. Sharp; Browning, Morefield, Lamie & Sharp,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this appeal we consider whether a torn rotator cuff muscle sustained by a worker because of repetitive motions in his assigned job is compensable under the Virginia Workers' Compensation Act, Title 65.1 (now 65.2) (the Act), as an occupational disease.

Carter McKinnon Parks was employed by Merillat Industries, Inc. to remove paint booth hangers from a rotating overhead conveyor. In 1989 Parks filed a claim with the Industrial Commission, now the Workers' Compensation Commission, to recover workers' compensation benefits for a tear to the rotator cuff muscle of his left arm. This tear resulted from repetitive overhead lifting and manipulation with his left arm required by his job. Merillat contended that Parks was not entitled to compensation benefits because the tear was a noncompensable cumulative traumatic injury.

Following a hearing, the Deputy Commissioner awarded Parks benefits under the Act, finding that the tear was compensable as an

occupational disease. The full Commission affirmed the award, and the Court of Appeals upheld the decision of the Commission. *Merillat Ind., Inc. v. Parks,* 15 Va. App. 44, 53, 421 S.E.2d 867, 872 (1992). Finding that the case presents an issue of substantial precedential value, Code § 17-116.07(B), we awarded Merillat an appeal. We now reverse.

■ Identification of compensable injuries under the Act has been the subject of considerable judicial and legislative activity since the Act's adoption in 1918. Only accidental injuries related to employment were compensable until 1944 when "a carefully limited coverage for occupational diseases was added." *Morris v. Morris,* 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). Under either category, the claimant has the burden of showing that the injury or disease arose out of and in the course of the employment. *Id.*

■ Occupational diseases were addressed in Code § 65.1-46.[1] That section provided:

> As used in this Act, unless the context clearly indicates otherwise, the term "occupational disease" means a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment.
>
> A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:
>
> (1) A direct causal connection between the conditions under which work is performed and the occupational disease,
>
> (2) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.
>
> (3) It can be fairly traced to the employment as the proximate cause,
>
> (4) It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column,

---

[1] Title 65.1, the Workers' Compensation Act, was recodified effective 1991 as Title 65.2. There were no substantive changes in the sections at issue here. However, references will be to Title 65.1 which was in effect at the time of the Commission's decision in this case.

(5) It is incidental to the character of the business and not independent of the relation of employer and employee, and

(6) It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

The General Assembly uses the word *disease* repeatedly in this section. Occupational disease is defined as a *"disease* arising out of and in the course of employment." The six factors that establish the causal connection, and accordingly qualify a condition as an occupational disease, are described as factors by which a *"disease* shall be deemed to arise out of the employment." These factors are not applied to a condition, an ailment, or an impairment; they are applied to a *disease*. A plain reading of this section requires that the condition for which compensation is sought as an occupational disease must first qualify as a disease.

■ In this case, however, neither the Deputy Commissioner, the Commission, nor the Court of Appeals determined whether the tear to Parks's rotator cuff was a disease. Rather, they concluded the tear was a compensable "occupational disease" because Parks established a causal connection between the rotator cuff tear and the work place by applying the six factors listed in § 65.1-46. This "causality" analysis standing alone, however, does not comply with the requirements of the Act set out above for determining compensability of an impairment. Furthermore, applying this analysis, any ailment would be compensable as an occupational disease as long as it is shown to be causally connected to the work place by meeting the six factors set out in § 65.1-46.[2]

---

[2] Parks argues that a "causality" analysis and coverage of this sort was intended by the General Assembly through amendments to the Act in 1986. Prior to 1986, the Commission held ordinary diseases of life compensable as occupational diseases under the Act if the six factors in § 65.1-46 were established. In 1985, this Court decided *Western Electric Co. v. Gilliam*, 229 Va. 245, 247, 329 S.E.2d 13, 14 (1985), holding that, although the condition at issue qualified as a disease it was an ordinary disease of life and ordinary diseases of life were not compensable under the Act even if they met the six factors. Following this decision, the General Assembly enacted § 65.1-46.1 which allowed compensation for ordinary diseases of life under certain circumstances, including meeting the six § 65.1-46 factors. Nothing in the 1986 legislation, however, alters the requirement of § 65.1-46 that the condition in issue be a *disease*.

We have declined previous invitations to broaden the scope of the Act to include job-related impairments arising from repetitive motion or cumulative trauma. We based our prior position, in part, on our conclusion that the categories of compensable injuries created by the legislature — accidental injury and occupational disease — are separate, meaningful categories. "A definition of either 'injury' or 'disease' that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act. . . . If this distinction is to be done away with, the legislature must do so." *Holly Farms v. Yancey*, 228 Va. 337, 340-41, 321 S.E.2d 298, 300 (1984).

In *Morris*, we held that gradually incurred traumatic injuries or cumulative trauma conditions were not compensable under the existing injury by accident-occupational disease dichotomy. And we again commented that the "General Assembly, despite repeated invitations to do so, has made no change in the . . . rule with respect to injuries gradually incurred, notwithstanding the passage of 47 years." *Morris*, 238 Va. at 586, 385 S.E.2d at 863.

The General Assembly still has not altered the categories of injuries and diseases nor has it substituted a single test of causality. We again decline to do so. Accordingly, for a rotator cuff tear to be compensable under the Act as an occupational disease, the record must support a finding that the tear is a disease.

The Commission's finding of "occupational disease" in this case was not a finding of fact that the tear was a disease rather than an injury, but a conclusion based solely on utilization of a causality analysis. Here all the testifying physicians except one described the rotator cuff tear as an injury.[3] The Commission noted that "many of the physicians have placed the claimant's problem in an injury category rather than a disease." Based on this record, the rotator cuff tear suffered by Parks must be classified as an injury, not a disease.

There is no claim for compensation for the present claimant's condition as an injury by accident and, indeed, the record is uncontradicted that the injury was caused by repetitive trauma that is not

---

[3] The single doctor who classified Parks's condition as a disease concluded that Parks's disease was "not a disease such as cancer, but . . . an overuse syndrome related to [his] type of employment."

compensable under the Act because it is not an injury incurred through an accident. *Morris*, 238 Va. at 586-87, 385 S.E.2d at 863.

Accordingly, we will reverse the judgment of the Court of Appeals and enter final judgment for Merillat, dismissing the claim.

*Reversed and final judgment.*