466 S.E.2d 750

**VDO YAZAKI COMPANY, et al.**

v.

**Robin S. SNYDER.**

**Record No. 0567–95–4.**

Court of Appeals of Virginia,
Alexandria.

Feb. 6, 1996.

Benjamin J. Trichilo, Fairfax (Trichilo, Bancroft, McGavin, Horvath & Judkins, P.C., on briefs), for appellants.

Peter M. Sweeny, Fairfax (Peter M. Sweeny & Associates, P.C., on brief), for appellee.

Present: ELDER and ANNUNZIATA, JJ., and DUFF, Senior Judge.

ANNUNZIATA, Judge.

VDO Yazaki Company ("employer") appeals the commission's award of benefits to Robin S. Snyder ("claimant"). Claimant was diagnosed with carpal tunnel syndrome, and the commission concluded that her condition qualified as an occupational disease. Employer argues that the commission applied an improper definition of disease and failed to follow *Merillat Industries v. Parks*, 246 Va. 429, 436 S.E.2d 600 (1993). We disagree and affirm the commission's award.

Claimant operated an electronic screwdriver on employer's assembly line from May 1993 to February 1994. Her job involved reaching overhead and gripping an electric screwdriver suspended on a spring, pulling it down to eye level, and depressing a trigger to activate the screwing mechanism. The process required little force, but tightening the screws caused some torque on the claimant's wrist. The claimant tightened between 7000 and 8000 screws per day.

When claimant first complained of discomfort on August 11, 1993, employer adjusted her work assignment to relieve her of such constant use. However, after continuing to feel aching, numbness, and tingling, claimant saw a physician, Dr. Stephen H. Martenson, on February 18, 1994. Upon Dr. Martenson's recommendation that the claimant avoid repetitive gripping, the employer moved the claimant from the screwdriver to a soldering station.

Dr. Martenson initially described the claimant's condition as an "overuse syndrome" caused by her history of job-related repetitive motion. On May 2, 1994, after consulting with his associate, Dr. Martenson diagnosed the claimant's condition as "carpal tunnel syndrome," a condition falling within the broader term, "overuse syndrome."

Dr. Martenson characterized claimant's condition as a "disease," defining disease as

any deviation from or interruption of the normal structure or function of any part, organ or system (or combination thereof) of the body that is manifested by a characteristic

set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown.

Dr. Martenson agreed that this definition of "disease" is broad enough to include ankle sprains, heart disease, broken arms, or nearly any malady of the body. However, Dr. Martenson also testified that the definition he used is consistent with his medical training. Moreover, according to Dr. Martenson, carpal tunnel syndrome is a median neuropathy and a neuropathy is a "disease."

Dr. Martenson completed a questionnaire tracking the causation requirements of Code § 65.2–400 and concluded that claimant's condition was caused by, incident to, and a consequence solely of her employment.

Employer did not produce medical evidence to contradict Dr. Martenson's diagnosis. Instead, employer argued that Dr. Martenson had employed an improper definition of disease.

■ Code § 65.2–400 defines the term "occupational disease" as a "disease arising out of and in the course of employment." Before a condition can be considered an "occupational disease," it first must qualify as a "disease." *See Merillat,* 246 Va. at 432–33, 436 S.E.2d at 601–02. Additionally, the disease must have arisen from employment according to the six statutory factors of Code § 65.2–400(B).

■ Dr. Martenson's opinion that carpal tunnel syndrome is a disease provided credible evidence to support the commission's findings. The definition Dr. Martenson applied in expressing his opinion was compatible with the *Sloane–Dorland Annotated Medical–Legal Dictionary* definition of "disease," which this Court has expressly adopted. *See Perdue Farms, Inc. v. McCutchan,* 21 Va.App. 65, 68–69, 461 S.E.2d 431, 433 (1995); *Piedmont Mfg. Co. v. East,* 17 Va.App. 499, 503, 438 S.E.2d 769, 772 (1993). Moreover, Dr. Martenson testified that the definition he applied was consistent with the definition of disease he was taught during the course of his medical training. Dr. Martenson also testified that claimant's condi-

tion is a median neuropathy and that a neuropathy is a "disease." Finally, Dr. Martenson's opinion effectively precluded the possibility that the condition was the result of anything but the claimant's employment. When, as here, the commission's findings are based on credible evidence, those findings are conclusive and binding on this Court. *See Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va.App. 276, 279, 348 S.E.2d 876, 877 (1986).

The *Merillat* Court stated that "[a] definition of either injury or disease that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless [the dichotomy between accidental injuries and occupational diseases]." *Merillat*, 246 Va. at 433, 436 S.E.2d at 602 (quoting *Holly Farms v. Yancey*, 228 Va. 337, 340, 321 S.E.2d 298, 300 (1984)). However, employer's argument that a definition of disease similar to the one from *Sloane–Dorland*, which we approved in *Piedmont*, is too broad and violates the Supreme Court's admonition in *Merillat*, misconstrues the significance of Dr. Martenson's testimony. In both *Merillat* and *Holly Farms*, no evidence proved that the claimants' conditions were diseases. Faced with such a lack of evidence, the *Merillat* Court held that considering a claimant's condition an "occupational disease" without first finding that it was a "disease" violated the statute and threatened to destroy the injury/disease dichotomy. *Merillat*, 246 Va. at 432–33, 436 S.E.2d at 601–02. Similarly, in *Holly Farms*, no evidence proved that claimant's back strain was a disease, nor did the evidence prove that the claimant's back strain was caused by a "sudden, obvious mechanical or structural change" in the claimant's back. *Holly Farms*, 228 Va. at 340, 321 S.E.2d at 299–300. Thus, the Court held that the deputy commissioner erred in concluding that the claimant could recover for an accidental injury, or, alternatively, for an occupational disease. However, neither *Merillat* nor *Holly Farms* rejects a particular definition of disease, and neither stands for the proposition that a medical expert's uncontradicted testimony concerning what constitutes a disease is insufficient within the statutory scheme.

In this case, the commission accepted the unimpeached opinion of Dr. Martenson that claimant's carpal tunnel syndrome is a "disease" caused by her employment.

Accordingly, we affirm the commission's decision.

*Affirmed.*