COLEMAN, Judge,
concurring.
I agree with the majority that the Supreme Court’s holding in The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), compels us to hold that sensorineural hearing loss caused by prolonged exposure to noise in the workplace is not a disease. I reach this conclusion, not because hearing loss is *106 inconsistent with a definition of disease that the Supreme Court has set forth, but because Jemmott classifies “job-related impairments arising from repetitive motion or cumulative trauma ” as gradually incurred injuries. Id. at 199, 467 S.E.2d at 802 (emphasis added). Accordingly, because occupational hearing loss is consistent with the definition of a gradually incurred injury, it is not a disease, and because gradually incurred injuries that result from cumulative trauma are not compensable under the Act, Walter Rhodes’ hearing loss is not compensable even though it arose out of and in the course of his employment. Although I agree with the majority, I write separately to express my concern that even though today’s decision is mandated by Supreme Court precedent, it is inconsistent, in my opinion, with the expressed intent of the legislature’s 1986 amendment to the Act. Furthermore, the decision is inconsistent with the decisions of the commission and the Court which the legislature did not see fit to change during its 1986 study and revisions.
When the Workers’ Compensation Act was first enacted in 1918, “[c]ompensation for disease ‘in any form’ was excluded except Vhere it resulted] naturally and unavoidably from [an] accident.’ ” Jemmott, 251 Va. at 192, 467 S.E.2d at 798. Thus, only diseases that were the consequence of or secondary to an industrial accident were compensable. In 1944, the General Assembly provided a schedule of occupational diseases, and a condition other than an injury by accident was not compensable under the Act unless it was listed in this schedule. See Code § 65.1-47 (repealed 1970); Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). The legislature abolished the schedule of compensable diseases in 1952, but then reenacted it in 1958. In 1969, a study committee appointed by the General Assembly recommended eliminating the schedule of diseases. Report of the Virginia Advisory Legislative Council, Matters Pertinent to the Industrial Commission of Virginia, Va.H.Doc. No. 17, at 6 (1969). Significantly, the committee’s recommendation was based on its finding that the schedule was too restrictive.
The schedule of occupational diseases as set out in § 65.1-47 attempts to be all-inclusive. However, the only possible *107 effect the schedule can have is to eliminate a disease which may in fact be an occupational disease.... The elimination of the schedule insures the most comprehensive coverage of occupational diseases; yet the employer is not prejudiced because the disease must in fact be an occupational disease, arising out of and in the course of employment.
Id. (emphasis added). The General Assembly accepted this recommendation and repealed the schedule of occupational diseases, replacing it with a statutory scheme for coverage of occupational diseases that has remained essentially unchanged since 1970. 1970 Va.Acts. 470.
Beginning in 1958 and continuing until the legislature eliminated the schedule of occupational diseases in 1970, the schedule included tenosynovitis.[2] See 1958 Va.Acts 457. Tenosynovitis, like carpal tunnel syndrome, is a type of tendon-sheath disorder and is “usually caused by the constant repetition of stereotype movements.” David F. Tver & Kenneth A. Anderson, Industrial Medicine Desk Reference 282 (1986); see also Lamberson v. Phillips Oldsmobile, Inc., 63 O.I.C. 212, 214 (1984) (finding that CTS is “known as tendinitis or tenosynovitis in the area of the median nerve and the carpal tunnel”). Thus, the schedule of diseases, which was the precursor to the current statutory scheme, was not limited to conditions caused by infectious biological agents or exposure to environmental hazards, but in fact, included a cumulative trauma condition resulting from repetitive motion. Considering the legislative history which shows that the General Assembly eliminated the schedule of diseases for the expressed purpose of expanding rather than restricting coverage of the Act, the interpretation of Code § 65.2-400 rendered by the *108 Supreme Court in Jemmott and applied by us today is not in accord, in my opinion, with the expressed legislative intent.
Today’s holding departs from prior decisions of the commission and this Court, both of which have held that hearing loss from prolonged exposure to noise is a disease, albeit an ordinary disease of life rather than an occupational disease. Prior to the Supreme Court’s decision in Western Electric Co. v. Gilliam, 229 Va. 245, 329 S.E.2d 13 (1985), the commission routinely awarded claimants benefits for hearing loss caused by exposure to noise at work. Island Creek Coal Co. v. Breeding, 6 Va.App. 1, 8, 365 S.E.2d 782, 786 (1988); see Hale v. Clinchfield Coal Co., 59 O.I.C. 112 (1981); Mullins v. Clinchfield Coal Co., 58 O.I.C. 253 (1978); Lee v. Norfolk Gen. Hosp., 57 O.I.C. 226 (1977); Rodahaver v. Allegheny Airlines, 56 O.I.C. 270 (1975). In Gilliam, the Supreme Court held that an ordinary disease of life was not compensable under the Act regardless of its causal connection to the claimant’s employment. Relying on that decision, we held that hearing loss was a noncompensable ordinary disease of life. See Belcher v. City of Hampton, 1 Va.App. 312, 338 S.E.2d 654 (1986). Soon after Gilliam was decided, however, the General Assembly enacted Code § 65.2-401[3] (formerly Code § 65.1-46.1), which allows claimants to receive compensation for ordinary diseases *109 of life that are sufficiently connected to their employment. The legislative intent in enacting Code § 65.2-401 was to restore the law as it existed prior to Gilliam. Island Creek Coal, 6 Va.App. at 9, 365 S.E.2d at 787; Report of the Joint Subcommittee Studying Workers’ Compensation, H.Doc. No. 27, at 8 (1986). Consequently, we have interpreted Code § 65.2-401 to provide compensation for gradually incurred hearing loss from prolonged noise exposure as an ordinary disease of life. Bader v. Norfolk Redevelopment & Hous. Auth, 10 Va.App. 697, 700, 396 S.E.2d 141, 143 (1990); Island Creek, 6 Va.App. at 8-9, 365 S.E.2d at 786. The General Assembly has not acted to reverse this interpretation. Generally, “[w]e presume that the legislature is cognizant of the interpretation the statute has been given by this Court ... and of the commission’s application of Virginia precedent.”[4] City of Norfolk v. Lillard, 15 Va.App. 424, 430, 424 S.E.2d 243, 247 (1992); see also Peyton v. Williams, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965).
As the Supreme Court has noted, “[t]he General Assembly created the Workers’ Compensation scheme as a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public.” Morris, 238 Va. at 584, 385 S.E.2d at 862. Today’s decision reverses a relatively longstanding practice of both the commission and this Court of awarding benefits for occupational hearing loss, even though the legislature’s approval of treating occupational hearing loss as a compensable disease was reflected in its 1986 amendments to the Act, and subsequent acquiescence to this Court’s interpretation of those amendments. In my view, reversal of the award in this case, which I agree is mandated by Jemmott, does not “adhere to the view that it is peculiarly within the *110 province of the General Assembly to adjust the balance of competing interests inevitably involved when such a fundamental policy change is contemplated.” Morris, 238 Va. at 588, 385 S.E.2d at 864. Nevertheless, I am constrained to concur in the majority’s holding.
Addendum
Alabama: Ala.Code § 25-5-1(9) (1975) (injury); Neely Truck Line, Inc. v. Jones, 624 So.2d 1385, 1386 n. 1 (Ala.Civ.App. 1993) (injury).
Alaska: No decision.
Arizona: No decision.
Arkansas: Sanyo Mfg. Corp. v. Leisure, 12 Ark.App. 274, 675 S.W.2d 841, 842-44 (1984) (occupational disease).
California: Cal.Labor Code § 3208.1 (West 1989) (injury may be “specific” or “cumulative”); Ashley v. Workers’ Compensation Appeals Bd., 37 Cal.App.4th 320, 43 Cal.Rptr.2d 589, 590-91 (1995) (implies CTS is compensable as an injury).
Colorado: Delta Drywall v. Industrial Claim Appeals Office, 868 P.2d 1155, 1157-58 (Colo.Ct.App.1993) (CTS is compensable as either a disease or an injury).
Connecticut: Erisoty v. Merrow Machine Co., 34 Conn.App. 708, 643 A.2d 898, 899 (1994) (implies that CTS is compensable as an injury).
Delaware: Torres v. Allen Family Foods, 672 A.2d 26, 28-29 (Del.1995) (implies that CTS is compensable as an injury).
Florida: Simon Sez, Inc. v. Ferrer, 567 So.2d 51, 52 (Fla.Dist.Ct.App.1990) (injury).
Georgia: Eastern Airlines, Inc. v. Moss, 197 Ga.App. 61, 397 S.E.2d 445, 446 (1990) (implies that CTS is compensable as an injury).
Hawaii: No decision.
Idaho: Kinney v. Tupperware Co., 117 Idaho 765, 792 P.2d 330, 333 (1990) (occupational disease).
Illinois: Peoria County Belwood Nursing Home v. Industrial Comm’n, 115 Ill.2d 524, 106 Ill.Dec. 235, 237, 505 N.E.2d 1026, 1028 (1987) (injury).
*111 Indiana: Duvall v. ICI Americas, Inc., 621 N.E.2d 1122, 1124-27 (Ind.Ct.App.1993) (injury).
Iowa: Noble v. Lamoni Prods., 512 N.W.2d 290, 293-94 (Iowa 1994) (injury).
Kansas: Berry v. Boeing Military Airplanes, 20 Kan.App.2d 220, 885 P.2d 1261, 1267-68 (1994) (CTS falls somewhere between the definitions of disease and injury, but is compensable nonetheless).
Kentucky: Brockway v. Rockwell Int’l, 907 S.W.2d 166, 168 (Ky.Ct.App.1995) (implies that CTS is a compensable injury).
Louisiana: La.Rev.Stat.Ann. § 23:1031.1(B) (1996); Price v. City of New Orleans, 672 So.2d 1045, 1049 (La.Ct.App.1996) (injury).
Maine: Ross v. Oxford Paper Co., 363 A.2d 712, 714 (Me.1976) (injury).
Maryland: Lettering Unltd. v. Guy, 321 Md. 305, 582 A.2d 996, 998-99 (1990) (occupational disease).
Massachusetts: No decision.
Michigan: Illes v. Jones Transfer Co., 213 Mich.App. 44, 539 N.W.2d 382, 385-87 (1995) (implies that CTS is compensable as an injury).
Minnesota: Jones v. Thermo King, 461 N.W.2d 915, 916-17 (Minn.1990) (injury).
Mississippi: Segar v. Garan, Inc., 388 So.2d 164, 165-66 (Miss.1980) (implies that CTS is a compensable injury).
Missouri: Weniger v. Pulitzer Pub. Co., 860 S.W.2d 359, 360 (Mo.Ct.App.1993) (occupational disease).
Montana: Bremer v. Buerkle, 223 Mont. 495, 727 P.2d 529, 531 (1986) (injury).
Nebraska: Morton v. Hunt Transp., Inc., 240 Neb. 63, 480 N.W.2d 217, 221 (1992) (injury).
Nevada: Nev.Rev.Stat. § 617.450 (1995) (listing tenosynovitis as an occupational disease).
*112 New Hampshire: In re Gilpatric, 138 N.H. 360, 639 A.2d 267, 268-69 (1994) (implies that CTS is compensable as an injury).
New Jersey: In re Musick, 143 N.J. 206, 670 A.2d 11, 14-15 (1996) (injury).
New Mexico: Salinas-Kendrick v. Mario Esparza Law Office, 118 N.M. 164, 879 P.2d 796, 798 (Ct.App.1994) (implies that CTS is an injury).
New York: Winn v. Hudson Valley Equine Ctr., 215 A.D.2d 920, 626 N.Y.S.2d 578, 579 (N.Y.App.Div.1995) (occupational disease).
North Carolina: Seagraves v. The Austin Company of Greensboro, Rec. No. COA95-853, 472 S.E.2d 397, 1996 WL 406457, at *1 (N.C.CtApp. July 16,1996) (implies that CTS is compensable as an occupational disease).
North Dakota: No decision.
Ohio: Frazier v. Mayfield, 64 Ohio App.3d 605, 582 N.E.2d 620, 622-23 (1989) (occupational disease).
Oklahoma: Mid-Continent Casualty Co. v. Bradley, 855 P.2d 145, 146 (Okla.Ct.App.1993) (implies that CTS is an injury).
Oregon: Sibley v. City of Phoenix, 107 Or.App. 606, 813 P.2d 69, 71 (1991) (occupational disease).
Pennsylvania: Brooks v. Workmen’s Compensation Appeal Bd. (Anchor Glass Container), 155 Pa.Cmwlth. 248, 624 A.2d 821, 822 (1993) (injury).
Rhode Island: Vater v. HB Group, 667 A.2d 283, 285-86 (R.I.1995) (implies that CTS is compensable).
South Carolina: Rodney v. Michelin Tire Corp., 466 S.E.2d 357, 359 n. 1 (S.C.1996) (holding that it has not been decided whether CTS is compensable, and if so, whether it is compensable as an injury or an occupational disease).
South Dakota: Schuck v. John Morrell & Co., 529 N.W.2d 894, 899-900 (S.D.1995) (injury).
Tennessee: Barker v. Home-Crest Corp., 805 S.W.2d 373, 376 (Tenn.1991) (injury).
*113 Texas: Tex.Labor Code Ann. § 401.011(34) (West 1996) (defining occupational disease to include “repetitive trauma injury”).
Utah: Stouffer Foods Corp. v. Industrial Comm’n, 801 P.2d 179, 182-83 (Utah.Ct.App.1990) (implies that CTS is compensable).
Vermont: No decision.
Washington: Davis v. Bendix Corp., 82 Wash.App. 267, 917 P.2d 586, 588 (1996) (occupational disease).
West Virginia: Lilly v. State Workmen’s Compensation Comm’r, 159 W.Va. 613, 225 S.E.2d 214, 217-18 (1976) (holding that cumulative trauma conditions qualify as occupational diseases).
Wisconsin: Brown v. Labor & Industry Rev. Comm’n, Rec. No. 83-878,117 Wis.2d 781, 343 N.W.2d 830, 1983 WL 161395, at *1-2 (Wis.Ct.App. Dec. 27, 1983) (occupational disease).
Wyoming: Cumow v. State ex rel. Wyoming Workers’ Compensation Div., 899 P.2d 875, 877-78 (Wyo.1995) (implies that CTS is compensable as an injury).

. The General Assembly first enacted an occupational disease schedule in 1944, and this schedule did not include tenosynovitis. 1944 Va.Acts. 77. In 1952, the legislature repealed the occupational disease schedule. 1952 Va.Acts 565. Six years later, the legislature reenacted the schedule and included tenosynovitis as an occupational disease. 1958 Va. Acts 457.

. Code § 65.2-401. "Ordinary disease of life” coverage.
An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this title if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and that:
1. It follows as an incident of occupational disease as defined in this title; or
2. It is an infectious or contagious disease contracted in the course of one’s employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or
3. It is characteristic of the employment and was caused by conditions peculiar to such employment.

. It should also be noted that the General Assembly has expressly provided in the Workers' Compensation Act that claimants shall be compensated for permanent total loss of hearing. Code § 65.2-503(B)(15). Although Code § 65.2-503 does not indicate whether hearing loss is a disease or an injury, we presume that the legislature was cognizant when it last amended the statute of decisions rendered by this Court and the commission that characterized gradually incurred hearing loss as a disease.