COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick,[*] Judges Elder and Annunziata
Argued at Richmond, Virginia


A NEW LEAF, INC.
and
ERIE INSURANCE EXCHANGE
                                          OPINION BY
v.        Record No. 0360-97-2        JUDGE LARRY G. ELDER
                                         FEBRUARY 3, 1998
ELAINE R. WEBB


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Monica L. Taylor (Linda D. Frith; Gentry,
              Locke, Rakes & Moore, on briefs), for
              appellants.

              Elaine R. Webb, pro se.


     A New Leaf, Inc. and Erie Insurance Exchange (collectively

"appellant") appeal a decision of the Workers' Compensation

Commission ("commission") awarding medical benefits to Elaine R.

Webb ("claimant").  Appellant contends the commission erred when

it concluded that the allergic contact dermatitis afflicting

claimant was a compensable "disease" under the Workers'

Compensation Act ("Act").  For the reasons that follow, we

affirm.

                              I.

                            FACTS

     Claimant has been employed by appellant as a floral designer

since October, 1993.  Her duties include designing and

─────────────────
         [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

constructing floral arrangements and "processing" flowers that are delivered to appellant's store. Processing flowers entails removing excess foliage from the flowers, cutting their stems, and placing them in water. Two of the flowers with which claimant works are alstroemeria and tulips. In March, 1995, claimant noticed blisters and a "splotchy area" on her right index finger and palm. Claimant unsuccessfully attempted to treat this condition herself, and the irritation spread up her arms to her elbows.

On August 30, 1995, Dr. John Carpenter, claimant's family physician, examined claimant and concluded that she suffered from "dermatitis." However, Dr. Carpenter was uncertain whether claimant's dermatitis was "fungal or a contact type . . . or a combination." Beginning in November, 1995, claimant was treated by Dr. Anna Magee, a dermatologist. Claimant underwent "patch tests" that revealed she was allergic to both alstroemeria and tulips. Dr. Magee diagnosed claimant with "allergic contact dermatitis to tulips and alstro[e]meria." Dr. Magee later opined that claimant's allergic contact dermatitis was caused by her exposure to alstroemeria and tulips at work. She stated that allergic contact dermatitis is "a very common problem with florists." She opined that claimant's allergic contact dermatitis "was most likely caused by at least two and probably more physical contacts with the chemicals contained in alstro[e]meria and tulips during her employment."

2

The record contains three articles describing the incidence, causation, and course of allergic contact dermatitis in florists. See Cindy Hoogasian, Dermatitis Concerns Spark Industry Study, Florist, Jan. 1988, at 95 ("Hoogasian I"); Cindy Hoogasian, Dermatitis Concerns Continue, Florist, March 1990, at 75 ("Hoogasian II"); Robert M. Adams, M.D. et al., Alstroemeria: The Cause of a New and Potent Allergen for Florists (manuscript of article eventually published in Dermatology Clinics, Jan. 1990). These articles state that allergens contained in plants have long been recognized as a source of dermatitis and that the condition became particularly prevalent among florists in the 1980s. See Adams, supra, at 1; Hoogasian I, supra, at 95-96, Hoogasian II, supra, at 75. Allergic contact dermatitis "is a skin irritation caused by contact with an allergen." Hoogasian I, supra, at 96. The condition "involves a reaction of the body's immune system to the substance to which that person is sensitive . . . ." Hoogasian II, supra, at 77. Alstroemeria, tulips and other flowers contain chemicals that "cause allergic skin reactions in some people with skin sensitivities." Hoogasian I, supra, at 96, 99; see also Hoogasian II, supra, at 76, 77, Adams, supra, at 1, 4. Increased exposure to these allergens "sensitize[s] some people to the extent that an allergic reaction takes place upon contact with the chemical." Hoogasian I, supra, at 96. However, one article states that "[t]here is little or no fear" the public will develop allergic

3

sensitivity to the allergen in alstroemeria because "their actual involvement with the flower is limited." Hoogasian I, supra, at 98. According to Dr. Alan Moshell, an occupational dermatologist in Washington, D.C., the general public has little chance of becoming sensitized to floral allergens and that "[o]nly in cases where there is constant contact with the juice of the alstroemeria, such as a designer or a sales employee would have, is there cause for concern." Id. at 98, 96. Once an individual develops an allergy to the chemicals in a particular flower, it is generally "a lifelong sensitivity." Hoogasian II, supra, at 76, 77.

Claimant filed a claim for benefits contending that her allergic contact dermatitis was a compensable occupational disease. Appellant defended against the claim on the sole ground that allergic contact dermatitis is not a compensable disease under the Act. Following a hearing, a deputy commissioner concluded that claimant's allergic contact dermatitis was a compensable occupational disease under Code § 65.2-400 and awarded benefits to claimant.

Appellant appealed, and the commission affirmed. Quoting The Stenrich Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996), the commission stated that "job-related impairments resulting from cumulative trauma caused by repetitive motion, however labeled or however defined, are, as a matter of law, not compensable under the present provisions of the Act." The

4

commission then found that "[t]he evidence does not establish that cumulative traumatic insults resulting from repetitive motion caused the claimant's condition." The commission also found that allergic contact dermatitis is caused by "exposure over time to a particular causative agent resulting in an adverse reaction in the form of contact dermatitis." The commission reasoned that claimant's allergic contact dermatitis was not barred from compensation under Jemmott because it did not result from a cumulative trauma caused by repetitive motion. The commission concluded that allergic contact dermatitis was a compensable occupational disease.

## II.
### "FLORIST'S ALLERGIC CONTACT DERMATITIS"
### AS A COMPENSABLE DISEASE UNDER THE ACT

Appellant contends the commission erred as a matter of law when it concluded that claimant's allergic contact dermatitis was a compensable disease. It argues that allergic contact dermatitis is a "cumulative trauma" condition and cannot be compensated under the Act. We disagree.

Although a condition caused by "cumulative trauma" cannot be a "disease" under the Act as that term has been construed by our Supreme Court, see Jemmott, 251 Va. at 199, 467 S.E.2d at 802; Merillat Indus., Inc. v. Parks, 246 Va. 429, 433, 436 S.E.2d 600, 602 (1993) (citing Morris v. Morris, 238 Va. 578, 586, 385 S.E.2d 858, 863 (1989)); see also Allied Fibers v. Rhodes, 23 Va. App. 101, 104, 474 S.E.2d 829, 830 (1996), the record in this case

5

established that claimant's allergic contact dermatitis, although incurred over time, was <u>not</u> caused by the process of "trauma." Thus, we first hold that allergic contact dermatitis is not excluded <u>per se</u> from coverage as a disease under the Act. Turning to the legal aspect of the mixed question presented by this case, we hold as a matter of law that "florist's allergic contact dermatitis" qualifies as a disease under the Act.

A.

This case compels us to revisit an issue of some uncertainty in Virginia Workers' Compensation jurisprudence: the General Assembly's intended meaning of the word "disease" in the Act. As has often been stated, the Act currently provides coverage for impairments arising out of and in the course of employment that fall into one of two categories: (1) "injury by accident" or (2) "occupational disease." Code § 65.2-101; <u>see</u> <u>Jemmott</u>, 251 Va. at 192-93, 467 S.E.2d at 798-99; <u>Merillat</u>, 246 Va. at 431, 436 S.E.2d at 600-01; <u>Holly Farms/Federal Co. v. Yancey</u>, 228 Va. 337, 340, 321 S.E.2d 298, 299 (1984). Although used repeatedly in the text of the Act, the word "disease" was not defined by the General Assembly.

The Supreme Court has set forth some basic parameters for determining whether a particular impairment or condition was intended by the General Assembly to be compensated as a "disease" under the Act. First, the Court has stated that when the General Assembly added "occupational diseases" to those impairments

6

covered by the Act in 1944, it intended this coverage to be "carefully limited." Morris, 238 Va. at 584, 385 S.E.2d at 862. In addition, in order for a condition to be compensable as an occupational disease, it "must first qualify as a disease." Merillat, 246 Va. at 432, 436 S.E.2d at 601. As such, whether an impairment or condition is a compensable "disease" is a mixed question of law and fact that is reviewable on appeal. See Jemmott, 251 Va. at 192, 467 S.E.2d at 798. The "factual part" of the mixed question includes both the nature and causation of a claimant's ailment. See id. The "legal part" of the mixed question involves deciding "whether these impairments . . . constitute diseases within the contemplation of the Act." Id. (also stating that "the crucial inquiry is whether the Commission correctly applied the law to the established facts"). Medical evidence that a particular condition is considered a disease, standing alone, is not dispositive of whether the condition is covered under the Act as a disease. See id. at 198, 467 S.E.2d at 801 (stating that "just because a doctor opines that a particular impairment is a disease does not necessarily make it so").

Regarding the substantive meaning of the word "disease" under the Act, the Supreme Court has eschewed the approach of setting forth a "bright line" definition of disease. Instead, the Supreme Court has only defined disease in the negative, stating what the term "disease" does not mean. According to the

7

Supreme Court, the General Assembly's intended meaning of "disease" is not so broad as to "encompass any bodily ailment of whatever origin," Yancey, 228 Va. at 340, 321 S.E.2d at 300, or to "expand[] the limits of coverage to a point where the Workers' Compensation scheme would amount to a general plan of health insurance." Morris, 238 Va. at 584, 385 S.E.2d at 362. In addition, the meaning of "disease" under the Act is not the same as the definition of this term that appears in The Sloane-Dorland Annotated Medical-Legal Dictionary. See Jemmott, 251 Va. at 197-98, 467 S.E.2d at 801-02.[1] Finally, the Court has held that the "disease" category under the Act does not include either "impairments resulting from cumulative trauma caused by repetitive motion" or "gradually incurred traumatic injuries or cumulative trauma conditions." Id. at 199, 467 S.E.2d at 802 (citing Merillat, 246 Va. at 433, 436 S.E.2d at 601-02, and interpreting its holding in Morris); see also Rhodes, 23 Va. App.

---

[1]This definition was adopted by this Court in Piedmont Mfg. Co. v. East, 17 Va. App. 499, 438 S.E.2d 769 (1993), and applied in several subsequent cases prior to Jemmott. Under this definition, a disease included:

> any deviation from or interruption of
> the normal structure or function of any part,
> organ, or system (or combination thereof) of
> the body that is manifested by a
> characteristic set of symptoms and signs
> whose etiology, pathology, and prognosis may
> be known or unknown.

Piedmont Mfg. Co., 17 Va. App. at 503, 438 S.E.2d at 772 (quoting The Sloane-Dorland Annotated Medical-Legal Dictionary 209 (1987)).

8

at 104, 474 S.E.2d at 830 (stating that "[t]he Supreme Court's holding [in Jemmott] . . . leaves no doubt that in Virginia cumulative trauma conditions, regardless of whether they are caused by repetitive motion, are not compensable under the Act"). A corollary of the Supreme Court's rejection of proposed definitions of disease in Yancey and Jemmott is that whether a particular ailment is a "disease" under the Act is determined on a case-by-case basis.

B.

Turning to the facts of this case, we disagree with appellant's contention that claimant's allergic contact dermatitis is a "cumulative trauma" condition. The commission's factual finding that claimant's allergic contact dermatitis did not result from "cumulative trauma caused by repetitive motion" is supported by credible evidence and is binding on appeal. Furthermore, the evidence in the record established that allergic contact dermatitis is not caused by the process of "trauma." Therefore, we hold that claimant's allergic contact dermatitis is not a "cumulative trauma" condition and is thus not barred per se from qualifying as a compensable disease.

If supported by credible evidence in the record, the commission's factual findings are binding on appeal. See Code § 65.2-706. Although whether a particular disease qualifies for compensation under the Act is a question of law, whether a particular ailment is caused by cumulative trauma or through some other process is a question of fact. Cf. Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989) (stating that "the actual determination of causation is a factual finding").

Credible evidence supports the commission's factual finding that claimant's allergic contact dermatitis was not caused by "cumulative traumatic insults resulting from repetitive motion." The record indicates that claimant's allergic contact dermatitis

10

was not causally linked to any repetitive motion that she performed at work. Allergic contact dermatitis is caused by the reaction of an individual's immune system with a substance, such as chemicals contained in certain flowers, to which that individual has developed a hypersensitivity. Hoogasian I, _supra_, at 96; Hoogasian II, _supra_, at 76, 77; Adams, _supra_ at 1, 4. It is not caused by the wear and tear associated with a repetitive motion. Although claimant's duties included designing and constructing floral arrangements and "processing" flowers delivered to appellant's store, no evidence linked the motions associated with these activities to the outbreak of dermatitis on claimant's hands and arms. Because credible evidence supports this factual finding, it is binding on appeal.

Appellant's contention that claimant's allergic contact dermatitis was a "cumulative trauma condition" is flawed and based upon an incomplete reading of the record. Appellant argues that claimant's allergic contact dermatitis was caused by "cumulative traumatic exposure to chemicals in alstroemeria and tulips." This understanding of the causation of claimant's ailment is irreconcilable with the evidence in the record on this issue. Claimant's allergic contact dermatitis was not caused by the "traumatic" impact of floral chemicals upon her skin; it was caused by the reaction of antibodies produced by claimant's immune system with the chemical contained in the flowers that eventually manifested itself in claimant's contact dermatitis.

The articles contained in the record state that allergic contact dermatitis results when a person develops an allergic sensitivity to a substance, which in claimant's case was a chemical contained in alstroemeria and tulips. See Hoogasian I, supra, at 96-97, 99; Hoogasian II, supra, at 76, 77; Adams, supra at 4.[2] An allergic reaction is an "immunological reaction" between an allergen and antibodies produced by an individual's immune system that causes discomfort to the allergic individual.[3] 6 Lawyers' Medical Cyclopedia § 45A.1 (James G. Zimmerly ed., 3d ed. 1991); see 6 Ausman & Snyder's Medical Library (Lawyers Edition) § 11:1 (1990); Hoogasian II, supra, at 77. The reaction between allergen and antibody releases "pharmacologically active substances [that] cause inflammation and produce symptoms." 6 Lawyers' Medical Cyclopedia § 45A.2. The substance or allergen that causes the allergic reaction "usually does not produce a skin reaction on normal skin on first exposure, but . . . may do

_____

[2]According to The Sloane-Dorland Annotated Medical-Legal Dictionary, "contact dermatitis" is "due to allergic sensitization to various substances that produce inflammatory reactions in the skin of those who have acquired hypersensitivity to the allergen as a result of previous exposure to it." The Sloane-Dorland Annotated Medical-Legal Dictionary 162 (Supp. 1992).

[3]The Sloane-Dorland Annotated Medical-Legal Dictionary states that an "allergy" is "a hypersensitive state acquired through exposure to a particular allergen, reexposure bringing to light an altered capacity to react. . . . Allergies may be classified as immediate and delayed, and include atopy, serum sickness, allergic drug reactions, contact dermatitis, and anaphylactic shock." The Sloane-Dorland Annotated Medical-Legal Dictionary 19 (Supp. 1992) (emphasis added).

12

so on a subsequent exposure." Id. § 45A.1; see Hoogasian I, supra, at 96-97; Hoogasian II, supra, at 77. Thus, claimant's hypersensitivity to the floral chemical developed as antibodies in her immune system began reacting abnormally with the allergen contained in the flowers. This biochemical process through which the sensitivity of claimant's immune system to floral allergens was gradually heightened is not the result of "trauma" which is typically associated with physical injury to the body. See The Sloane-Dorland Annotated Medical-Legal Dictionary 745 (1987) (defining "trauma" as "a wound or injury, whether physical or psychic"). Because trauma does not play a part in the development of an allergic sensitivity to a particular allergen, claimant's allergic contact dermatitis was not a "cumulative trauma" condition.

The absence of a traumatic process in the development of claimant's allergic sensitivity to alstroemeria and tulips distinguishes this case from Allied Fibers v. Rhodes, 23 Va. App. 101, 474 S.E.2d 829 (1996). In Rhodes, this Court held that bilateral sensorineural hearing loss due to noise exposure did not qualify as a disease because it was a cumulative trauma condition. See Rhodes, 23 Va. App. at 105, 474 S.E.2d at 831. The record in Rhodes established that hearing loss due to noise exposure is caused by physical damage to the outer hair cells in the cochlea that results in "their [in]ability to vibrate in response to sound." Id. at 104, 474 S.E.2d at 830. The evidence

13

in that case also established that "[n]oise damage to sensorineural hearing belongs under the general heading of traumatic injury because it is strictly a physical force." Id. (emphasis added). Unlike the ailment in Rhodes, the hypersensitization of claimant's immune system to the allergens in alstroemeria and tulips was not caused by the type of physical force associated with "trauma."

Appellant also contends that this case is controlled by United Airlines, Inc. v. Walter, 24 Va. App. 394, 482 S.E.2d 849 (1997). In Walter, this Court held that photosensitivity to fluorescent lighting is an injury rather than a disease. See Walter, 24 Va. App. at 396-97, 482 S.E.2d at 850-51. However, the Walter opinion does not contain sufficient facts regarding the causation of photosensitivity to be considered controlling authority. The opinion contains no description of the process through which an individual develops a sensitivity to fluorescent light. The opinion merely states that the claimant was diagnosed with photosensitivity that was "gradually incurred," and then offers a dictionary definition of the ailment. See id. at 395, 396-97, 482 S.E.2d at 850, 850-51 (stating that The Sloane-Dorland Annotated Medical-Legal Dictionary defines photosensitivity as "an 'abnormal reactivity of the skin to sunlight'"). Due to this dearth of information, we cannot ascertain whether photosensitivity is caused by trauma or some other process. Thus, we hold that Walter is unsuitable for

14

comparison to other ailments and that its holding is necessarily limited to its facts.

C.

Having decided that claimant's allergic contact dermatitis is not a "cumulative trauma" condition that is barred per se from compensation under the Act, we next consider whether it is a compensable disease as a matter of law.  We hold that, based on the policies underlying the Supreme Court's prior construction of the term "disease," the purpose of the Act, and the nature of claimant's aliment, the General Assembly intended its "carefully limited" coverage of occupational diseases to include allergic contact dermatitis caused by exposure to floral allergens in the workplace.

A review of the Supreme Court's three major cases in this area, Yancey, Merillat, and Jemmott, indicates that two primary policy considerations underlie the Court's construction of the term "disease."  First, the Supreme Court has rejected "broad" definitions of disease in order to maintain the coherence of the current "injury-by-accident/occupational-disease" dichotomy in a manner consistent with the principles of statutory construction.  See Monument Associates v. Arlington County Bd., 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991) (stating that statutes "should be interpreted, if possible, in a manner which gives meaning to every word"); see also Jemmott, 251 Va. at 198, 467 S.E.2d at 801-02 (rejecting the Piedmont definition of "disease" because

15

"it . . . 'would make unnecessary and meaningless the two categories specifically set forth in the Act'"); Merillat, 246 Va. at 433, 436 S.E.2d at 601-02 (stating that the Court has rejected previous invitations to broaden the scope of the Act based on its conclusion "that the categories of compensable injuries created by the legislature--accidental injury and occupational disease--are separate, meaningful categories"); Yancey, 228 Va. at 340, 321 S.E.2d at 300 (rejecting a broad definition of disease because it would make "unnecessary and meaningless" the "injury-by-accident/occupational-disease" dichotomy). Second, the Supreme Court's decisions evince its intent to prevent claimants from pretextually using the "disease" category of impairments as a loophole to obtain benefits for "cumulative trauma" conditions that are otherwise non-compensable as "injuries by accident." See Jemmott, 251 Va. at 194-97, 199, 467 S.E.2d at 799-801, 802 (summarizing prior cases in which claimants have sought to classify gradually-incurred injuries as occupational diseases and stating that impairments resulting from cumulative trauma caused by repetitive motion are not compensable under the present provisions of the act "however labeled or however defined" by claimants).

Neither of these policy concerns is implicated by concluding that florist's allergic contact dermatitis is a compensable "disease" under the Act. First, holding that florist's allergic contact dermatitis qualifies as a disease would not threaten the

16

coherence of the existing distinction between "injuries by accident" and "occupational diseases." The development of an allergic sensitivity to floral allergens cannot be confused with an "injury" because it is not a "mechanical or structural change in the body." Virginia Elec. and Power Co. v. Cogbill, 223 Va. 354, 356, 288 S.E.2d 485, 486 (1982) (stating that an injury is "an obvious . . . mechanical or structural change in the body"). Claimant's allergic contact dermatitis occurred as a result of exposure to a chemical contained in two flowers: alstroemeria and tulips. Through a process that involved neither "repetitive motion" nor "cumulative trauma," the chemical reacted with claimant's antibodies in a way that caused her immune system to develop a hypersensitivity to the chemical. Although claimant's allergic sensitivity to the allergen in these flowers had a physical manifestation -- the contact dermatitis on her hands and arms -- her underlying problem cannot be understood as an "injury." Unlike prior attempts to set forth all-purpose definitions of disease, narrowly holding that florist's allergic contact dermatitis is within the General Assembly's intended meaning of "disease" does not render the two categories of ailments "unnecessary and meaningless," Yancey, 228 Va. at 341, 321 S.E.2d at 300, or threaten to convert the Act into "a general plan of health insurance." Morris, 238 Va. at 584, 385 S.E.2d at 862.

Ironically, accepting appellant's contention that florist's

allergic contact dermatitis is <u>not</u> a disease would threaten the integrity of the "injury-by-accident/occupational-disease" distinction. Although the Supreme Court has repeatedly warned of the dangers of a definition of disease that is too broad, the hazards of a concept of disease that is <u>too narrow</u> are equally apparent. As previously discussed, the record in this case established that allergic contact dermatitis was not caused by a process of "cumulative trauma" to claimant. Many ailments that have been traditionally considered to be occupational diseases manifest themselves over time. Unlike the coverage of injuries under the Act, the General Assembly's "carefully limited" coverage of diseases is not confined to "diseases by accident" as currently written. Were we to hold that a non-trauma-related condition such as allergic contact dermatitis does not qualify as a disease under the Act, we would move one step closer to creating an incomprehensible "slippery slope" under which <u>all</u> gradually incurred ailments, regardless of whether they are caused by trauma, fail to qualify as "diseases" under the Act. Such an interpretation of "disease" finds no support in <u>Yancey</u>, <u>Merillat</u>, or <u>Jemmott</u> and would render the "disease" category of ailments a nullity.

> A [concept] of either "injury" or "disease"
> that is so [narrow] as to encompass [no]
> bodily ailment of whatever origin is too
> [narrow] because it would make unnecessary
> and meaningless the two categories
> specifically set forth in the Act.

<u>Yancey</u>, 228 Va. at 340, 321 S.E.2d at 300.

18

Likewise, narrowly holding that florist's allergic contact dermatitis is a compensable disease does not open the floodgates of compensation to claimants who might use sophistic arguments to categorize conditions truly caused by cumulative trauma as "diseases." Florist's allergic contact dermatitis is a well-defined ailment that is caused by a distinctive, non-traumatic process. It is thus distinguishable from "cumulative trauma" conditions and, therefore, cannot be used to expand the disease category to permit coverage for trauma-related injuries that are excluded from compensation under the "injury-by-accident" category.

Finally, we conclude that the General Assembly intended its "carefully limited" coverage of occupational diseases to include florist's allergic contact dermatitis. The General Assembly enacted the Act for the purpose of compensating employees for accidental injuries and certain diseases "within the hazards of the employment." See Morris, 238 Va. at 584, 385 S.E.2d at 861-62. The General Assembly has defined the phrase "occupational disease" to mean "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." Code § 65-2-400(A). Appellant does not contest and the record conclusively proves that claimant's allergy to alstroemeria and tulips arose out of and in the course of her employment. The record also established that the development of an allergic

sensitivity to floral allergens is a hazard peculiar to employment in the floral industry. Dr. Magee stated that allergic contact dermatitis is "a very common problem with florists." One article stated that "[t]here is little or no fear" that the public will develop allergic sensitivity to the allergen in alstroemeria because "their actual involvement with the flower is limited." Hoogasian I, supra, at 98. According to Dr. Moshell, an allergic sensitivity to alstroemeria is likely to develop "[o]nly in cases where there is constant contact with the juice of the alstroemeria, such as a designer or a sales employee would have . . . ." Id. at 98.

Because covering florist's allergic contact dermatitis as a disease under the Act is consistent with the General Assembly's purpose and does not threaten to erode the "injury-by-accident/occupational-disease" dichotomy or to create a loophole that enables compensation of gradually-incurred traumatic injuries, it is a compensable "disease" as a matter of law.

For the foregoing reasons, we affirm the decision of the commission.

<u>Affirmed</u>.

Fitzpatrick, C.J., dissenting.

                              I.

   I respectfully dissent.  Claimant began working as a florist
for New Leaf, Inc. in October, 1993.  Her daily duties included
handling flowers, floral design and providing floral arrangements
for weddings.  At least once a week, she processed flowers, which
included removing the flowers' foliage, cutting the flowers'
stems and placing them in water.

   In March, 1995, claimant first noticed "blisters" and "a
splotchy area" on her right index finger and palm.  On August 30,
1995, Dr. John Carpenter, claimant's family doctor, diagnosed
claimant's condition as dermatitis of unclear etiology.  In
November, 1995, Dr. Anna Magee, a dermatologist, diagnosed the
condition as allergic contact dermatitis.  Dr. Magee conducted a
"patch test," which demonstrated that claimant exhibited an
allergic reaction to alstroemeria and tulips.  Dr. Magee
concluded that this was an occupational disease caused by
claimant's exposure on at "least two and probably more physical
contacts with the chemicals contained in alstro[e]meria and
tulips during her employment."

   At a hearing before the deputy commissioner, claimant
testified that she was exposed to two types of flowers,
alstroemeria and tulips, that caused her condition.
Additionally, claimant testified that "[a] lot of times what has
happened to my hand doesn't happen on the first day or two.  It's

                              21

after you have worked with it time after time."  Employer did not dispute claimant's exposure to these flowers or that claimant contracted this condition from her employment.  The deputy commissioner entered an award in claimant's favor.

The full commission affirmed the award of medical benefits and found claimant's contact dermatitis to be a compensable occupational disease.  The commission found that claimant had a disease which was distinguishable from the impairments at issue in the repetitive motion line of cases.  See The Stenrich Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996) ("job-related impairments resulting from cumulative trauma caused by repetitive motion [are] not compensable").  The commission found as follows:

> In the case at bar, there is no evidence that the claimant's condition resulted from "cumulative trauma caused by repetitive motion," rather, the evidence reveals exposure over time to a particular causative agent resulting in an adverse reaction in the form of contact dermatitis.  The evidence demonstrates that it is the irritant contained in the alstroemeria and the tulips that effects the skin changes which manifest as contact dermatitis.  The evidence does not establish that cumulative traumatic insults resulting from repetitive motion have caused the claimant's condition.

II.

Employer argues that claimant's allergic contact dermatitis is not compensable under Code § 65.2-400, because it was caused by cumulative exposure over an extended time to certain fresh

22

flowers at her employment.[4]  I agree.

A claimant seeking benefits under the Act must prove either "an injury by accident or an occupational disease 'arising out of and in the course of the employment.'"  Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 37, 422 S.E.2d 165, 169 (1992) (quoting Code § 65.2-101).  Noting that the definition of a compensable "injury" or "disease" had created difficulties in previous cases, the Virginia Supreme Court in The Stenrich Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996), spoke clearly in enunciating the rule regarding gradually incurred impairments.  The Court unequivocally stated that "job-related impairments resulting from cumulative trauma caused by repetitive motion, however labeled or however defined, are, as a matter of law, not compensable under the present provisions of the Act." Id.  "We are bound by decisions of the Supreme Court of Virginia and are without authority to overrule them."  Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991).

In Allied Fibers v. Rhodes, 23 Va. App. 101, 474 S.E.2d 829 (1996), we held that a gradually incurred hearing loss was not compensable as an occupational disease.  We based this decision on the Virginia Supreme Court's "'clear refusal to broaden the scope of the Act to include job-related impairments arising from repetitive motion or cumulative trauma.'"  Id. at 104, 474 S.E.2d

_____

[4]Employer does not dispute that claimant's evidence satisfies the requirements listed in Code § 65.2-400 regarding causation.

23

at 830 (quoting Jemmott, 251 Va. at 199, 467 S.E.2d at 802) (citations omitted). We found the holding in Jemmott "clear and unequivocal, [leaving] no doubt that in Virginia cumulative trauma conditions, regardless of whether they are caused by repetitive motion, are not compensable under the Act." Rhodes, 23 Va. App. at 104, 474 S.E.2d at 830.

Similarly, in United Airlines v. Walter, 24 Va. App. 394, 396-97, 482 S.E.2d 849, 850 (1997), we held that the claimant's "photosensitivity, resulting from cumulative exposure to radiation by fluorescent lights, [was] a gradually incurred injury and not an industrial disease within the meaning of the Workers' Compensation Act." Therefore, under Rhodes and Jemmott, it was not compensable.

"[T]he doctrine of stare decisis is more than a mere cliche." Selected Risks Ins. Co v. Dean, 233 Va. 260, 265, 355 S.E.3d 579, 581 (1987) (citation omitted). "Under the rule of stare decisis, a decision by a panel of this court is an established precedent." Robinson v. Commonwealth, 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992). We are not at liberty to ignore our holdings in Rhodes and Walter.

In the instant case, the record demonstrates that claimant's gradually incurred condition resulted from repeatedly touching alstroemeria and tulips at work. The clear rule from Jemmott and its progeny mandates reversal of the commission's award.[5] Thus,

_____

[5]The majority attempts to distinguish the instant case from Walter by limiting Walter to its facts. However, the claimant in

24

claimant's impairment, "resulting from cumulative trauma . . . however labeled or however defined, [is], as a matter of law, not compensable under the present provisions of the Act."  Jemmott, 251 Va. at 199, 467 S.E.2d at 802.

For the foregoing reasons, I would reverse.

---

Walter developed a skin condition, among other things, from cumulative exposure to radiation.  Here claimant developed a skin condition from cumulative exposure to chemicals in certain flowers.  The absence in Walter of as detailed an account of the physiology of immunological reactions as the majority provides does not render Walter inapplicable to the facts before us.