Present: All the Justices

A NEW LEAF, INC., ET AL.

v.  Record No. 980454  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 8, 1999
ELAINE R. WEBB

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we decide whether allergic contact
dermatitis is compensable as an occupational disease under the
Virginia Workers' Compensation Act (the Act).  Because the
claimant's contact dermatitis was caused by a reaction to
allergens in certain flowers and not by cumulative trauma
induced by repetitive motion, we will affirm the judgment of
the Court of Appeals that the condition is compensable under
the Act.

I.

Elaine Ruth Webb has been employed by A New Leaf, Inc. (A
New Leaf), as a florist since October 1993.  In 1994, she
became the store's senior florist.  Her responsibilities
included daily handling, cutting, and arranging of flowers.
She was also in charge of weddings, preparing store designs,
and compiling daily financial reports.

In March 1995, Webb noticed blistered, splotchy areas on
her right index finger and on the palm of her right hand.
Webb described the condition as similar in appearance to a

poison ivy rash.  Initially, she believed that the problem was just an irritation and that she could treat it with nonprescription lotions.  However, the blistering worsened.

Consequently, in August 1995, Webb decided to seek treatment from her family physician, Dr. John Carpenter.  After examining Webb's hands, Dr. Carpenter diagnosed "Dermatitis" but was "unclear whether it [was] fungal or a contact type of dermatitis or a combination."  Dr. Carpenter prescribed several medications for the dermatitis.  After the medications did not alleviate Webb's problem, Dr. Carpenter recommended that she see a dermatologist.  By then, the blistering had appeared on two of Webb's fingers and the thumb on her right hand.  It was also present on the same fingers and thumb on her left hand.  From there, the dermatitis had spread from her left wrist up to her elbow.[1]

In November 1995, Dr. Anna M. Magee, a dermatologist, examined Webb.  Dr. Magee diagnosed Webb's condition as "Allergic Contact Dermatitis to plants most likely."  She also prescribed medications to treat the dermatitis, recommended that Webb wear gloves while performing her florist duties, and warned Webb about the risks of working with certain flowers.

---

[1] Webb testified that she had never before experienced any dermatological problems to her hands.  In fact, she had not previously worked with real flowers.

Dr. Magee eventually performed a patch test on Webb to determine which flowers were causing Webb's problem.  On April 4, 1996, Dr. Magee reported that Webb's allergic contact dermatitis was attributable to her interaction with tulips and alstroemeria.[2]

In two letter reports, dated April 4, 1996, and July 5, 1996, Dr. Magee opined that Webb was allergic to alstroemeria and tulips and that, therefore, her condition was an occupational disease.  She also stated that allergic contact dermatitis is a common problem for florists.  Dr. Magee subsequently confirmed that Webb's contact dermatitis was "most likely caused by at least two and probably more physical contacts with the chemicals contained in alstro[e]meria and tulips during her employment."

Webb introduced into evidence two articles dealing with the relationship between contact dermatitis caused by allergens found in certain plants and the florist industry: Cindy Hoogasian, Dermatitis Concerns Continue, FLORIST, March 1990, at 75; Cindy Hoogasian, Dermatitis Concerns Spark Industry Study, FLORIST, Jan. 1988, at 95.  In these articles, Hoogasian describes allergic contact dermatitis as a "reaction

---

[2] A New Leaf decided to stop stocking alstroemeria.  It still uses tulips since they are in season for only a short period of time during the year, unlike alstroemeria, which is available throughout the year.

of the body's immune system to the substance to which that person is sensitive . . . ." (Hoogasian, 1990, supra, at 77). She states that flowers, such as the alstroemeria and tulip, contain chemicals or allergens that "cause allergic skin reactions in some people with skin sensitivities." (Hoogasian, 1988, supra, at 96). Hoogasian further opines that "[t]here is little or no fear" the public will develop allergic sensitivity to the allergen in alstroemeria because "their actual involvement with the flower is limited." Id. at 98. "Only in cases where there is constant contact with the juice of the alstroemeria, such as a designer or a sales employee would have, is there cause for concern." Id.

Webb filed a claim for workers' compensation benefits on May 15, 1996. A deputy commissioner of the Virginia Workers' Compensation Commission (Commission) awarded benefits to Webb, finding that the contact dermatitis is an occupational disease under Code § 65.2-400. Upon review, the full Commission affirmed the award of benefits to Webb. A panel of the Court of Appeals of Virginia affirmed the decision of the Commission. A New Leaf, Inc. v. Webb, 26 Va. App. 460, 495 S.E.2d 510 (1998). In explaining its decision, the Court of Appeals stated:

> Credible evidence supports the commission's factual
> finding that claimant's allergic contact dermatitis was
> not caused by "cumulative traumatic insults resulting

4

from repetitive motion."  The record indicates that claimant's allergic contact dermatitis was not causally linked to any repetitive motion that she performed at work.  Allergic contact dermatitis is caused by the reaction of an individual's immune system with a substance, such as chemicals contained in certain flowers, to which that individual has developed a hypersensitivity.  It is not caused by the wear and tear associated with a repetitive motion.  Although [Webb's] duties included designing and constructing floral arrangements and "processing" flowers delivered to [A New Leaf's] store, no evidence linked the motions associated with these activities to the outbreak of dermatitis on [Webb's] hands and arms.

Id. at 468, 495 S.E.2d at 514.  (Citations omitted).  A New Leaf appeals.

## II.

Under the Act, Code §§ 65.2-100 to -1310, a claimant must prove by a preponderance of the evidence either an "injury by accident" or an "occupational disease."  Code § 65.2-101; see also Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989).  Webb filed her claim for workers' compensation benefits on the basis that contact dermatitis is an occupational disease.  The term "occupational disease" is defined as "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment."  Code § 65.2-400(A).  Subsection B of Code § 65.2-400 specifies six factors that are necessary to establish a causal connection between a disease and a worker's employment:

5

A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:

1. A direct causal connection between the conditions under which work is performed and the occupational disease;

2. It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;

3. It can be fairly traced to the employment as the proximate cause;

4. It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;

5. It is incidental to the character of the business and not independent of the relation of employer and employee; and

6. It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

A New Leaf concedes that Webb proved each of these factors. Nevertheless, A New Leaf contends that Webb's contact dermatitis is not compensable as an occupational disease because it was caused by repeated exposure to flowers and thus is the result of cumulative trauma. Relying primarily on this Court's decisions in The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), and Merillat Indus., Inc. v. Parks, 246 Va. 429, 436 S.E.2d 600 (1993), A New Leaf argues that Webb's repeated touching of the flowers gradually caused visible sores and wounds on her hands. According to A New Leaf, "[t]he touching of the flowers caused Webb to develop physical wounds on her body, the manifestation

of repeated trauma to her hands by the chemicals in the flowers."  We do not agree.

Pursuant to Code § 65.2-706(A), an award of benefits by the Commission upon review "shall be conclusive and binding as to all questions of fact."  However, "whether a worker has suffered an impairment that constitutes a compensable disease is a mixed question of law and fact"  Jemmott, 251 Va. at 192, 467 S.E.2d at 798.  Thus, the Commission's finding on that question is not conclusive but is a proper subject for judicial review.  Id.

As in Jemmott, the factual part of the inquiry in this case is whether Webb suffered an impairment.  Id.  This portion includes any facts relevant to the nature and cause of the impairment sustained by Webb.  The legal part of the mixed question is whether Webb's allergic contact dermatitis constitutes an occupational disease within the meaning of the Act.  Id.  As already stated, A New Leaf contests only the legal portion of the inquiry.

We turn now to the two cases upon which A New Leaf relies in support of its position.  In Merillat, we addressed whether a torn rotator cuff muscle sustained as a result of repetitive motion was compensable under the Act as an occupational disease.  Upon examining the six factors in Code § 65.2-400(B) that are required to establish a causal connection between a

7

disease and a worker's employment, we concluded that merely satisfying the causality test is not sufficient unless "the condition for which compensation is sought as an occupational disease . . . first qualif[ies] as a disease." Id. at 432, 436 S.E.2d at 601. We then stated that the Commission's finding of an occupational disease was "not a finding of fact that the tear was a disease rather than an injury, but a conclusion based solely on utilization of a causality analysis." Id. at 433, 436 S.E.2d at 602. Thus, we concluded that the worker's rotator cuff tear was an injury, not an occupational disease, because it resulted from repetitive motion. We specifically refused "to broaden the scope of the Act to include job-related impairments arising from repetitive motion or cumulative trauma." Id., 436 S.E.2d at 601-02.

In Jemmott, we again addressed the range of occupational diseases compensable under the Act and, in doing so, considered the claims of three workers who had suffered either carpal tunnel syndrome or "trigger thumb." The doctors who had treated the claimants opined that the particular impairments at issue were diseases, but they also stated that the impairments were the result of cumulative trauma induced by repetitive motion. Accordingly, we concluded that each claimant's impairment must be classified as an injury, not a disease. Jemmott, 251 Va. at 198, 467 S.E.2d at 802. In

8

reaching that decision, we stated that "just because a doctor opines that a particular impairment is a disease does not necessarily make it so." Id., 467 S.E.2d at 801. We also emphasized, once again, "that job-related impairments resulting from cumulative trauma caused by repetitive motion, however labeled or however defined, are, as a matter of law, not compensable under the . . . Act." Id. at 199, 467 S.E.2d at 802.

Since A New Leaf concedes that Webb proved the six factors contained in Code § 65.2-400(B), the dispositive inquiry is whether contact dermatitis "qualif[ies] as a disease." Merillat, 246 Va. at 432, 436 S.E.2d at 601. In making that determination in Merillat and Jemmott, we considered the nature and cause of the impairments. For example, the torn rotator cuff muscle "resulted from repetitive overhead lifting and manipulation with [the worker's] left arm." Merillat, 246 Va. at 430, 436 S.E.2d at 600. Similarly, in Jemmot, one of the doctors who diagnosed carpal tunnel syndrome testified in a deposition that the repetitive motions involved in the worker's job caused "'micro trauma,' meaning 'a small amount of injury in a repetitive motion to the same area . . . occur[ring] in patients [who] flex their wrist and impinge the nerve as it courses through the carpal tunnel.'" 251 Va. at 189-90, 467 S.E.2d at 797.

9

Likewise, the doctor who diagnosed "trigger thumb" attributed that impairment to "'the accumulation or the product of many repetitious minor injuries to a joint, in the case here of the thumbs.'" Id. at 191, 467 S.E.2d at 798.

In contrast to the evidence in Merillat and Jemmott, Dr. Magee stated that Webb is allergic to alstroemeria and tulips and that the contact dermatitis was caused by Webb's physical contact with the chemicals contained in those flowers. Contact dermatitis was described as a "reaction of the body's immune system to the substance to which that person is sensitive." (Hoogasian, 1990, supra, at 77). Although the sores and blisters appeared on Webb's hands after frequent handling of the flowers in question, there is no evidence in the record that Webb's allergic contact dermatitis resulted from cumulative trauma arising from repetitive motion.

As the Commission stated in its opinion, "the evidence reveals exposure over time to a particular causative agent resulting in an adverse reaction in the form of contact dermatitis." The chemicals in alstroemeria and tulips triggered a dermatological reaction, which is distinct from the wear and tear resulting from a repetitive motion. Thus, allergic contact dermatitis, unlike carpal tunnel syndrome, "trigger thumb," or a torn rotator cuff muscle, "qualif[ies] as a disease." Merillat, 246 Va. at 432, 436 S.E.2d at 601.

10

Accordingly, we conclude that Webb's allergic contact dermatitis is a compensable occupational disease within the meaning of the Act.

For these reasons, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.