COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


HUDSON VENETIAN BLIND SERVICE, INC.
 AND PENNSYLVANIA GENERAL
 INSURANCE COMPANY
                                        MEMORANDUM OPINION[*]
v.    Record No. 1611-98-2                PER CURIAM
                                          MAY 18, 1999
DONALD A. HUDSON


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          (Bradford C. Jacob; Taylor & Walker, P.C., on
          brief), for appellants.

          (Andrew J. Reinhardt; Kerns, Kastenbaum &
          Reinhardt, on brief), for appellee.


     Hudson Venetian Blind Service, Inc., and its insurer

(hereinafter referred to as "employer") contend that the Workers'

Compensation Commission erred in holding that Donald A. Hudson

proved (1) that he suffers from a polyneuropathy or a peripheral

neuropathy based upon the opinion of Dr. Robert J. DeLorenzo; (2)

that his condition was caused by exposure to chemicals at work;

(3) that he suffers from a compensable occupational disease rather

than a gradually incurred, noncompensable, cumulative exposure to

chemical solvents; (4) that a June 1, 1995 extender spill incident

caused his condition; and (5) that he was totally disabled since

March 1, 1996, and, therefore, was not obligated to market his

_____

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

residual capacity.  Upon reviewing the record and the briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the commission's decision.  See Rule 5A:27.

## I., II. and IV.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). Factual findings made by the commission will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). Moreover, "[t]he actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding."  Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

Dr. DeLorenzo, chief neurologist at the Medical College of Virginia Hospital ("MCV"), a neurology professor, and the Director of the Neuroscience Research Facility, testified that he talked to Hudson on several occasions, performed a one and one-half hour history and complete physical and neurological examination of Hudson, reviewed Hudson's MCV medical chart for approximately four to five hours at various intervals, spent another hour reading Hudson's initial evaluations, and another two hours reviewing all of his laboratory testing.  In his de bene esse deposition, Dr.

- 2 -

DeLorenzo opined that Hudson suffers from "a peripheral neuropathy with both sensory and motor components, as well as evidence of central nervous system damage . . . probably . . . in the spinal cord . . . called a myelopathy."  Dr. DeLorenzo testified that to a reasonable degree of medical certainty the damage to Hudson's nervous system was caused by his unprotected exposure to paint solvents and chemicals in the workplace.  Dr. DeLorenzo opined that Hudson's condition could have been caused by "one or two very large exposures in the workplace, which it's my understanding that that happened . . . or [by] chronic accumulation."  Dr. DeLorenzo stated that Hudson's condition was probably due to both causes and was "[d]efinitely not" due to an idiopathic cause.  Dr. DeLorenzo's December 13, 1996 letter report was consistent with the opinions he expressed in his deposition.

As fact finder, the commission was entitled to accept Dr. DeLorenzo's opinions and to reject any contrary medical opinions. "Questions raised by conflicting medical opinions must be decided by the commission."  Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).  Dr. DeLorenzo's opinions provide credible evidence supporting the commission's finding that Hudson suffers from a polyneuropathy or peripheral neuropathy caused by exposure to paint solvents and chemicals in his workplace.  "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to

support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

Furthermore, whether Hudson's condition was caused by a single exposure or prolonged high exposure to chemical solvents in the workplace is immaterial. Dr. DeLorenzo stated that Hudson's condition was attributable to either situation or both. Based upon Hudson's testimony and Dr. DeLorenzo's opinions, the commission properly concluded that "the particular event on June 1, 1995 produced a definitive change in [Hudson's] condition, such that it suddenly and unexpectedly produced the myriad effects in [Hudson's] central nervous system that significantly altered his condition."

### III.

The Supreme Court's recent decision in A New Leaf, Inc. v. Webb, 257 Va. 190, 511 S.E.2d 102 (1999), is dispositive of this issue. In Webb, the Supreme Court held that a florist's allergic contact dermatitis was compensable as an occupational disease because it was caused by a reaction to allergens in certain flowers encountered in the claimant's job as a florist, not by cumulative trauma induced by repetitive motion. See id. at 192, 511 S.E.2d at 102.

"'[W]hether a worker has suffered an impairment that constitutes a compensable disease is a mixed question of law and fact.' Thus, the Commission's finding on that question is not

- 4 -

conclusive but is a proper subject for judicial review." Id. at 196, 511 S.E.2d at 104. In determining whether Hudson's condition qualifies as an occupational disease, we must consider the nature and cause of the impairments. See id. at 197, 511 S.E.2d at 105.

Here, credible medical evidence, including the medical records and opinions of Dr. DeLorenzo, proved that Hudson's polyneuropathy or peripheral neuropathy was caused by the reaction of his body to unprotected high exposure to paint solvents and chemicals in the workplace, whether over an extended period of time or over several large exposures. No evidence established that Hudson's condition was caused by cumulative trauma induced by repetitive motion. Accordingly, the commission did not err in holding that Hudson's condition is a compensable occupational disease within the meaning of the Workers' Compensation Act.

V.

The commission held that Hudson proved he had been totally disabled since March 1, 1996, and, therefore, had no obligation to market a residual work capacity. In so ruling, the commission found as follows:

> The record establishes that [Hudson] is severely disabled by his neurological problems, such that he is essentially limited to sitting in a chair, and talking on the telephone. Moreover, Dr. [Richard] Waller persuasively testified that he doubts

- 5 -

whether [Hudson] can perform such activities under stress, which he defined as "any type of complex intellectual functioning, or maybe interpersonal interactions, I guess outside the context of his family."

The testimony of Dr. Waller and Dr. DeLorenzo, who opined that Hudson was totally disabled from work and that his condition would not improve, constitutes credible evidence supporting the commission's findings. Based upon their testimony, coupled with evidence of Hudson's age, his significant neurological deficits and brain impairments, and his work history, the commission did not err in concluding that Hudson proved that he had been totally disabled since March 1, 1996, and therefore, was not obligated to market his residual capacity.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>