COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


FLEETWOOD HOMES OF VIRGINIA, INC. AND
 LUMBERMEN'S UNDERWRITING ALLIANCE
                                        MEMORANDUM OPINION* BY
v.    Record No. 2236-00-3              JUDGE ROBERT P. FRANK
                                             JUNE 5, 2001
PATRICIA S. McNEAL


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Monica L. Taylor (Dale W. Webb; Gentry,
              Locke, Rakes & Moore, on brief), for
              appellants.

              No brief or argument for appellee.


     Fleetwood Homes of Virginia, Inc., (employer) appeals the

Workers' Compensation Commission's (commission) finding that

Patricia McNeal's (claimant) claim for benefits for injury to

her neck was not barred by the statute of limitations. We find

that the commission erred in its application of the statute of

limitations and reverse the award.

                          I. BACKGROUND

     On October 2, 1987, claimant sustained an injury during her

employment as an assembler with employer, a mobile home

manufacturer. The initial diagnosis by Dr. Francis Amos was

"local" contusions and abrasions. He ordered an x-ray to

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

determine whether claimant had fractured a rib. On October 5, 1987, Dr. Amos reported that claimant was "sore along the right lateral rib cage" and "over the right line crest." He also noted that she had "extreme tenderness on the dorsum of the right shoulder." His diagnosis was "soreness secondary to trauma to the right side." On October 12, 1987, Dr. Amos had the x-ray results, which indicated claimant had a fractured rib.

On October 14, 1987, claimant was examined by Dr. Charles Bray, an orthopedist. He wrote that claimant sustained "soft tissue injuries except the fractured rib."

Employer accepted the claim as compensable and claimant signed a memorandum of agreement as to the payment of compensation. The memorandum of agreement described the injury as a "bruised shoulder & ribs." On November 19, 1987, the commission entered an award pursuant to the memorandum of agreement, which entitled claimant to benefits beginning on October 10, 1987.

Claimant returned to her pre-injury work on November 4, 1987, and the compensation benefits were terminated under an agreed statement of fact.

Claimant then relocated to Pennsylvania, where she continued to work for employer. There, she was treated by Dr. J. Paul Lyet, an orthopedist, who, on April 28, 1988, diagnosed her with "post traumatic muscle imbalance" of the right shoulder and "secondary rotator cuff tendonitis and

-

chronic impingement." Claimant received benefits pursuant to a supplemental award from April 6, 1988 to May 2, 1988, when she returned to work for employer.

On December 27, 1988, Dr. Lyet communicated his findings to employer's insurance adjuster and stated that claimant "certainly" had "permanent bone and joint pathology which" would "most likely cause problems at a later time."

Claimant received further treatment from Dr. Stoner, a chiropractor. By her account, she did not want to pay for further chiropractic care and requested permission to see another doctor. On April 6, 1994, employer's insurance adjuster directed claimant to see Dr. Balog, an orthopedist. On October 3, 1994, he diagnosed claimant with "cervical sprain with moderate right sided cervical radiculitis and . . . some degree of right shoulder subacromial bursitis," which he related to "her injury in question several years" before. On December 5, 1994, Dr. Balog referred claimant to Dr. Santo, an anesthesiologist, for "trial of cervical epidural" steroid injections. On January 30, 1995, Dr. Balog referred claimant to Dr. Stoner for treatment of the cervical radiculitis.

In September 1994, claimant suffered a second accidental injury during the course of her employment with employer. The second accident involved injury to her lower back and left leg. She was treated by Dr. Santo and Dr. Stoner for these injuries.

-

On August 5, 1998, claimant was evaluated by Dr. Lewis Irwin, a pain management specialist, who indicated claimant's "upper body pain" was "initiated by trauma received [eleven] years before."

On October 8, 1998, ten years after the initial injury, claimant filed a claim for benefits that requested payment of incurred medical and mileage expenses for treatment of her neck injury by Dr. Balog, Dr. Santo, and Dr. Stoner.

On April 8, 1999, claimant testified before the deputy commissioner. The deputy commissioner questioned claimant about the neck injury and the following exchange occurred:

> Q: Okay. Now, was the neck pain immediate or did it start later or when did you start having the neck pain?
>
> A: The whole thing that I have right now I had then but Dr. Amos, he did, that day, he said it was bruised.
>
> Q: That day being when?
>
> A: The day I went to him, October 2.
>
> Q: The day of the accident?
>
> A: Yes.
>
> Q: Did you have neck pain that day?
>
> A: My whole upper part of my body was hurting.
>
> Q: Okay. So to answer your question though, did you have neck pain that day?
>
> A: That was a long time ago, but I would say, yeah. I mean, it all hurt. It still hurts.

-

On April 9, 1999, the deputy commissioner awarded claimant benefits, finding that the treatment of claimant's neck was causally related to the October 2, 1987 accident. On August 14, 2000, the full commission affirmed the deputy commissioner's ruling with Commissioner Tarr dissenting.

## II. ANALYSIS

On appeal, employer contends the commission erred in finding that claimant's claim for injury to her neck was not barred by the two-year statute of limitations. We agree and reverse the award of the commission.

"Pursuant to Code § 65.2-706(A), an award of benefits by the Commission upon review 'shall be conclusive and binding as to all questions of fact.'" A New Leaf, Inc. v. Webb, 257 Va. 190, 196, 511 S.E.2d 102, 104 (1999).

Code § 65.2-601 states, "The right to compensation under this title shall be forever barred, unless a claim be filed with the Commission within two years after the accident."

> During this period, the employee must "assert against his employer any claim that he might have for any injury growing out of the accident." Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 446, 219 S.E.2d 849, 853 (1975) (emphasis added); Mayberry v. Alcoa Bldg. Prods., 18 Va. App. 18, 20, 441 S.E.2d 349, 350 (1994). Code § 65.2-601 is jurisdictional and failure to file within the allotted time bars the claim. Mayberry, 18 Va. App. at 20, 441 S.E.2d at 350.

Lynchburg Foundry Co. v. McDaniel, 22 Va. App. 307, 310, 469 S.E.2d 85, 87 (1996).

-

However, Code § 65.2-708(A) permits the commission, "on the ground of a change of condition," to "review any award and on such review . . . make an award ending, diminishing or increasing the compensation previously awarded," provided that "[n]o such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title, except:  (i) thirty-six months from the last day for which compensation was paid shall be allowed for the filing of claims payable under § 65.2-503 . . . ."

A review pursuant to Code § 65.2-708(A) is predicated upon a prior award.  Mayberry, 18 Va. App. at 21, 441 S.E.2d at 350-51 (citation omitted); see also Shawley, 216 Va. at 445-46, 219 S.E.2d at 852.

Id. at 310-11, 469 S.E.2d at 87.

First, we consider whether claimant's neck injury constituted a change in condition pursuant to Code § 65.2-708. The doctrine of compensable consequences provides

"[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

Bartholow Drywall Co., Inc. v. Hill, 12 Va. App. 790, 793-94, 407 S.E.2d 1, 3 (1991) (quoting Morris v. Badger Powhatan/Figgie Int'l., Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986)). "A change of condition claim based on the aggravation of a prior compensable injury falls within this doctrine."  Southern Iron

-

Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993) (citing Bartholow, 12 Va. App. at 797, 407 S.E.2d at 5). "'The simplest application of this principle is the rule that all the medical consequences and sequelae that flow from the primary injury are compensable.'" American Filtrona Co. v. Hanford, 16 Va. App. 159, 163, 428 S.E.2d 511, 513 (1993) (citation omitted).

In this case, we find that claimant's neck injury was not a medical consequence that flowed from the primary injury. Claimant testified before the deputy commissioner that she injured her neck on October 2, 1987, the date of the accident. Thus, according to claimant's own testimony, her neck injury was a primary injury, not a subsequent condition that developed as a result of the accident. Therefore, the limitation period in Code § 65.2-708(A) is inapplicable to claimant's neck injury claim.

Because we find that claimant's neck injury was a primary injury, the two-year limitation period in Code § 65.2-601 applies.

In Shawley, 216 Va. at 446, 219 S.E.2d at 853, the Supreme Court of Virginia held that "within [the limitation period] an employee must assert against his employer any claim that he might have for any injury growing out of the accident." The facts in Shawley are very similar to the facts in this case. In Shawley, Shawley fell from a ladder and injured himself during

-

his employment with Shea-Ball. Id. at 443, 219 S.E.2d at 850. Shea-Ball and its workmen's compensation carrier recognized the claim as compensable and entered into a memorandum of agreement with Shawley. Id. The memorandum of agreement stated Shawley injured his "'right hip and left ankle.'" Id. After Shea-Ball submitted a change in condition application, which was dismissed by the deputy commissioner, the full commission found the maximum improvement of Shawley's left leg had been attained and entered an award based on a twenty percent "[p]ermanent partial loss of the use of the left leg . . . ." Id. at 443, 219 S.E.2d at 851. On appeal to the Supreme Court, Shawley argued the commission refused to consider his additional claim for injuries to his back and right leg. Id. Shawley did not claim the injuries to his back and right leg in his original claim, and none of the medical documents submitted during the limitation period indicated he sustained an injury to his back or right leg. Id. at 443-44, 219 S.E.2d at 850-51.

The Court rejected Shawley's argument that he did not need to specify all injuries in his original claim or to assert them within the limitation period. Id. at 446, 219 S.E.2d at 853. The Court wrote that the assertion of any claim growing out of the accident was necessary because

> it is this notice to the employer and his
> insurance carrier that gives them knowledge
> of the accident and of their potential
> liability. Failure to give such notice
> within [the limitation period] would

-

> seriously handicap the employer and the
> carrier in determining whether or not there
> was in fact an injury, the nature and extent
> thereof, and if related to the accident.

Id.

Clearly, Shawley does not create an exception for adjacent body parts to the requirement that all claims growing out of an accident must be timely asserted. The memorandum of agreement stated Shawley injured his right hip and left ankle, yet his subsequent claim for injury to his right leg was rejected by the Supreme Court. Thus, despite the relationship between the right hip and right leg, the Court rejected Shawley's claim for the right leg injury because such injury was not specified within the limitation period.

In this case, claimant did not indicate she suffered injury to her neck in her original claim, and the neck injury was not reported in the medical documents submitted within the two-year limitation period following the date of the accident. Under Shawley, claimant was required to assert the claim for her neck injury within the limitation period because, according to her testimony, she suffered the neck injury on the date of the accident. Her claim for the injury to her neck is, therefore, barred by the statute of limitations.

For these reasons, we hold the commission erred in finding that the two-year statute of limitations did not act to bar the

-

claim for claimant's neck injury.  We, therefore, reverse the
award of the commission.

Reversed.

Coleman, J. dissenting.

In my opinion the majority applies the Supreme Court's holding in Shawley v. Shea-Ball Const. Co., 216 Va. 442, 446, 219 S.E.2d 849, 853 (1975), much too broadly and in so doing has circumvented the fact finding function of the commission, which in this case was to determine whether McNeal's neck injury was part of the compensable injury that the memorandum of agreement described as "bruised shoulder & ribs."  As the Supreme Court clearly pointed out in Shawley, when the commission makes such a determination of whether a claimed injury was part of the original compensable injury or whether an injury is a new or unrelated injury it is exercising a fact finding function.  See Shawley, 216 Va. at 444, 219 S.E.2d at 851 ("These findings of fact are conclusive and binding upon this Court.").

In Shawley, the Supreme Court upheld the commission's factual finding that the evidence failed to prove that Shawley's claim for back pain and a right ankle injury were related to his compensable left ankle injury.  However, here, because credible evidence supports the commission's factual finding that McNeal's neck or cervical spine injury for which she now seeks medical treatment was part of the same original injury that was designated in the memorandum of agreement as "bruised shoulder & ribs," I would affirm the commission's award.  The commission, in its opinion, reviewed the evidence and the several medical reports on which it relied that, if accepted, proved that McNeal

-

had suffered a crushing injury to her upper body and shoulders, which included the neck or cervical spine. The commission accepted and relied upon those reports and testimony in finding that McNeal's "shoulder" injury included an injury to the neck or cervical spine injury. Because credible evidence supports the commission's factual finding that McNeal's neck injury was part of her original compensable injury, I would affirm the commission's decision.

Furthermore, in my opinion, the majority's extension of the Shawley holding creates an enormous pitfall for the unwary claimant who has no obvious reason or incentive to not accept the benefits to which he or she will be entitled under a memorandum of agreement in which the employer or insurance carrier has chosen, and will now be encouraged, to list only one of the several compensable injuries that the employee may have received or to describe the injury to the most precise or restricted body part.

For the foregoing reasons, I respectfully dissent from the majority opinion.

-